UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-21188-Civ-COOKE/TURNOFF

ANAIDA CARRERAS,

    Plaintiff,

vs.

THIERRY'S, INC., and
THIERRY ISAMBERT,

    Defendants.

_____/

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    This is an action for recovery of unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203. Defendants filed a motion for summary judgment (ECF Nos. 40, 41) (the "Motion"), which is ripe for adjudication. (ECF Nos. 45, 58, 59). For the reasons stated herein, Defendants' Motion is granted.

    **I.**    **FACTUAL BACKGROUND**

    Unless otherwise noted, the following facts are not in dispute. Plaintiff Anaida Carreras ("Carreras") was hired on January 11, 2014 by Defendant Thierry's, Inc. for the position of "chef de cuisine." (ECF No. 1 at ¶ 10; ECF No. 59 at 6). Thierry, Inc. is in the catering business. (ECF No. 1 at ¶ 2). Carreras was hired during the busiest time of the year for Thierry's, Inc. (ECF No. 59 at 9). Carreras worked for Thierry's, Inc. for two months, resigning on March 14, 2014. (ECF No. 41 at ¶ 4; ECF No. 59 at 6). The kitchen at Thierry, Inc. was structured with an executive chef, who supervised the kitchen manager and the chef de cuisine. (ECF No. 46-1 at 8:12-15). The "chef de cuisine" is purportedly the second highest-ranking supervisor of the kitchen, second only to the executive chef. (ECF No. 41 at ¶ 2). However, while employed by Thierry's, Inc., Carreras spent 90 percent of her time cooking. (ECF No. 46-4 at 20:7-10).

1

Carreras was hired at a salary of $45,000 per year, plus $18.00 per hour when she worked off-site at parties. (ECF No. 58-3 at 4). Her salary was raised to $52,000 per year, plus $20.00 per hour when she attended off-site parties, though she only received one paycheck under this salary before resigning. (ECF No. 41-1 at 25:25 – 26:1; ECF No. 58-3 at 5). By contrast, Thierry's, Inc. pays its cooks on a per hour basis at a rate ranging from $9.00 to $14.00 per hour, depending on experience and whether work was done on-site or off-site, such as at parties. (ECF No. 41 at ¶ 11; ECF No. 46-4 at 7:8 – 8:4; ECF No. 59 at 8). One of Thierry, Inc.'s more experienced cooks earned $20,620.28 in 2013. (ECF No. 48-1).

Carreras attended managerial meetings on Mondays whenever she was scheduled to work that day. (ECF No. 46-3 at 31:11 – 32:5). The managerial meetings were attended by salespeople and people in charge of the various departments. (*Id.*). The executive chef, the kitchen manager, and the chef de cuisine, Carreras, were the kitchen employees that attended the managerial meetings. (ECF No. 41-3 at ¶ 8). The executive chef, Vincent Gourmet, was the person who spoke about the kitchen operations, and the person to whom questions were directed. (*Id.*). The kitchen office had three desks with computers; one for the executive chef, one for the kitchen manager, and one for Carreras. (ECF No. 41 at ¶ 10). Cooks employed by Thierry's, Inc. were required to punch a time clock. (ECF No. 46-4 at 21:7-10). Carreras was not. (ECF 58-3 at 5).

Carreras was responsible for directing the work of the cooks. (ECF No. 46-4 at 16:7-8). Carreras monitored other staff members and the food production under the direction and supervision of the executive chef. (ECF No. 41-4 at ¶ 10). If a problem between the employees in the kitchen arose, the problem would be communicated to Carreras, who would then bring the issue to the executive chef. (ECF No. 46-4 at 16:22 – 17:2). Carreras had the power to discipline the employees. (ECF No. 46-4 at 14:6-13). When a cook had a question about one of their job assignments, they were supposed to direct those questions to the chef de cuisine. (*Id.* at 24:23 – 25:4). Carreras monitored the work of the cooks to ensure it was done according to the correct standards. (*Id.* at 25:8-14). When the executive chef was absent, Carreras was in charge of the kitchen. (*Id.* at 26:6-8).

On one specific occasion, Carreras confronted another employee, Joseph Silvestri, who worked as a sous chef, regarding the fact that Mr. Silvestri had not adequately prepared for an event. (ECF No. 46-3 at 32:23 – 33:20). Carreras reported this incident to the executive chef. (ECF No. 59 at 8). Mr. Silvestri was fired by the time Carreras returned to work two days later. (ECF No. 46-3 at 32:23 – 33:20).

## II.  LEGAL STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Thus, the nonmoving party "'may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court, however, must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

## III.  ANALYSIS

The Fair Labor Standards Act requires that employers pay their employees time and a half for hours an employee works in excess of a 40-hour workweek. 29 U.S.C. § 207(a)(1). The FLSA's requirements do "not apply with respect to…any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). An employee is employed in a bona fide executive capacity if she is:

> (1) Compensated on a salary basis at a rate of not less than $455 per week…, exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

"Primary duty" is a term that is defined by 29 C.F.R. Section 541.700. For an employees' exempt work to constitute her "primary duty," it must be the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* "Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." *Id.* "Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work." *Id.*

**A.    Salary Requirement**

Plaintiff satisfies the first criteria of the bona fide executive exemption because she was compensated on a salary basis at a rate of not less than $455 per week. Carreras was hired at a salary of $45,000 per year (plus $18.00 per hour when she worked off-site at parties), which equates to at least $865 per week. By the time that

4

Carreras resigned her position, she earned $52,000 per year (plus $20.00 per hour when she worked off-site at parties), or at least $1,000 per week.

**B.     Primary Duty Requirement**

The second criteria of the bona fide executive exemption requires that the employee's primary duty is management of a customarily recognized department or subdivision thereof. Carreras was hired as chef de cuisine for the kitchen, clearly a recognized department or subdivision of Thierry's, Inc., who was in the catering business. The question is whether Carreras' "primary duty" was in the management of the kitchen. That question is determined based on all the facts in a particular case.

The undisputed facts demonstrate that the position of chef de cuisine is ostensibly the second highest-ranking supervisor of the kitchen, second only to the executive chef. Carreras was provided with certain benefits and duties demonstrating that her position was a step above ordinary cooks. Carreras was one of only three employees of the kitchen department to have her own desk and computer. The other two employees with a desk and computer were managerial-level employees, the executive chef and the kitchen manager. Carreras attended managerial meetings that were only attended by salespersons and employees in charge of the various departments. From the kitchen department, only Carreras, the executive chef and the kitchen manager attended these meetings. Carreras was also relatively free from direct supervision. Only the executive chef, and the owner of Thierry's, Inc., were her supervisors. Cooks, on the other hand, were supervised by the kitchen manager, Carreras, the executive chef and the owner.

The relationship between Carreras' salary and the wages paid to cooks for the kind of nonexempt work performed by Carreras also indicates to me that her primary duty was managerial in nature. When Carreras resigned from her position, she was earning a salary of $52,000 per year. Experienced cooks earning on the high end of the wage range earned $12.00 per hour for on-site work, and $14.00 per hour for occasional off-site work. Lianna Sanchez, a cook for Thierry, Inc., testified at deposition that she earned $12 per hour, and was "sometimes" asked to attend off-site parties where she was paid at a base rate of $14.00 per hour. The record indicates that, based on the seasonal nature of Thierry's, Inc.'s business, Ms. Sanchez earned

5

just $20,620.28 in 2013. (ECF No. 48-1). Thus, Carreras' salary was more than twice the amount earned by an experienced cook.

Carreras, however, argues that her primary duty was just as a cook because she spent 90 percent of her time cooking. While that one factor does weigh somewhat against a finding that Carreras' primary duty was managerial, it does not overcome the countervailing factors indicating that Carreras' primary duty was managerial in nature. This is especially true given the fact that Carreras' very short tenure at Thierry's, Inc. coincided with the busiest season for the company, resulting in a greater need for additional cooking assistance. Furthermore, the type of managerial duties Carreras would have performed – supervision of other cooks – lent itself to being performed while Carreras herself was also cooking. *See Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982) ("[A] strict time division is somewhat misleading here: one can still be 'managing' if one is in charge, even while physically doing something else. The 50 percent rule seems better directed at situations where the employee's management and non-management functions are more clearly severable than they are here."); *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1300-03 (S.D. Fla. 2006) (holding that employees were exempt as bona fide executives despite spending 80% of their time performing non-exempt tasks); *Jackson v. Advance Auto Parts, Inc.*, 362 F. Supp. 2d 1323, 1334 (N.D. Ga. 2005) (employees were exempt as bona fide executives despite spending 90% of their time performing non-exempt tasks). In this case, it makes perfect sense that a supervisor of cooks should spend the majority of her time working alongside the cooks. Under the totality of the circumstances, I find that Carreras' supervisory duties, including ensuring that cooks were meeting the company's standards, were more important than her duties as a cook.

**C.  Customary and Regular Direction of the Work of Two or More Other Employees Requirement**

The third criteria of the bona fide executive exemption requires that the employee customarily and regularly direct the work of two or more employees. The record demonstrates that Carreras handled complaints or grievances of the cooks and had the authority to discipline employees. When a cook had a question about one of

their job assignments, they were supposed to direct those questions to the chef de cuisine. Carreras monitored the work of the cooks to ensure it was done according to the correct standards. Finally, when the executive chef was absent, Carreras was in charge of the kitchen. I find that Defendants have satisfied this prong of the analysis.

### D. Requirement that Recommendations as to the Hiring, Firing, Advancement, Promotion or Any Other Change of Status of Other Employees Are Given Particular Weight

The final criteria of the bona fide executive exemption requires that the employee's recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. I find that this prong of the analysis is satisfied.

Carreras was only employed by Thierry's, Inc. for a short two month period. In that time, however, she reprimanded one employee, Joseph Silvestri, for not being ready for an event. Carreras admits that she reported this incident to the executive chef. Within two days, the employee had been terminated. Carreras argues that the employee already had been known for being a poor performer, but the record is clear that he was not terminated until he had an incident with Carreras.

Moreover, among the cooks, Carreras was a person who was treated as having a supervisory role. Lianna Diaz testified in deposition that Carreras was the person that employees went to with complaints. Ms. Diaz also stated in her declaration that Carreras monitored other staff members and the food production, albeit under the supervision of the executive chef. As such, Carreras served as a liason between the cooks and the executive chef. While the executive chef appears to have been the individual to actually hire and fire, the record indicates that Carreras' opinion as to the cooks' performance was given particular weight. A reasonable jury, placed in the position of considering a very limited time period in which Carreras worked for Thierry's, Inc., could not find otherwise.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1. Defendants' Motion for Summary Judgment (ECF No. 40) is **GRANTED.**

2. Plaintiff's Complaint is **DISMISSED**.

3. The Clerk is directed to CLOSE this case.

**DONE and ORDERED** in chambers, at Miami, Florida, this 23rd day of June 2015.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*